504 S.E.2d 456 (1998)
232 Ga. App. 765
WADE
v.
WHALEN.
No. A98A0068.
Court of Appeals of Georgia.
June 4, 1998.
Certiorari Denied October 23, 1998.
*457 *458 Waycaster, Morris, Johnson & Dean, R. Leslie Waycaster, Jr., Dalton, Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr., David A. Forehand, Jr., Cordele, for appellant.
Sistrunk & Associates, Atlanta, Carla R. Johnson, Philadelphia, PA, Alston & Bird, Theodore E.G. Pound, Whitehurst & Riexinger, Elaine W. Whitehurst, Stephen P. Riexinger, Atlanta, for appellee.
BEASLEY, Judge.
Charles Wade sued Dr. Thomas Whalen for medical malpractice arising out of the doctor's participation in surgery on Wade's mother. She died on August 12, 1992, allegedly as a result of the malpractice. Wade filed suit on August 10,1994, two days before the running of the statute of limitation.[1] Wade did not serve process on Dr. Whalen until eight months later on April 10, 1995. Dr. Whalen moved for summary judgment, asserting expiration of the time limitation. The court denied the motion and its renewal, but ultimately it did grant summary judgment. The issue is whether the trial court abused its discretion in finding Wade did not show diligent service of process.
1. "Where the statute of limitation accrues between the date of filing and the date of service, whether or not it relates back (if the service is more than five days after the filing) depends on the length of time and the diligence used by the plaintiff. The correct test must be whether the plaintiff showed that he acted in a reasonable and diligent manner in attempting to insure that a proper service was made as quickly as possible. A reasonable rule must be that in such case the trial judge should look at all the facts involved and ascertain whether the plaintiff was in any way guilty of laches. If he were, of course he would be barred, but if he acted in a reasonably diligent manner then he would not be. The plaintiff has the burden of showing lack of fault.... The question on appeal is whether the trial court abused its discretion in concluding that there was [not] due diligence by plaintiff in seeking to perfect service. To reverse the trial court, we would have to say as a matter of law that the trial court abused its discretion."[2]
"The special duty the plaintiff bears to exercise reasonable diligence in serving a complaint for which the statute of limitations *459 has expired, is too well established to dissertate. [Cits.] The thing that can never be lost in sight is that the plaintiff's cause of action was dead. It could not be revived unless the plaintiff used due diligence to perfect service, which diligence must be examined in light of the particular fact that the cause of action had expired."[3]
Diligence means "caution or case; persevering application devoted and painstaking application to accomplish an undertaking: assiduity." Webster's Third New International Dictionary. It embraces the concept of persistence. We must remember that when measuring diligence with respect to service of process, it is in the context of notifying a defendant of suit beyond the time the law ordinarily allows for the bringing of such a suit. It is the plaintiff's grace period.
This "special" duty of due diligence is elevated to an even higher duty of the greatest possible diligence once plaintiff becomes aware there is a problem with service. If the sheriff returns the summons after failed attempts, plaintiff becomes "`obligated to exercise, not due diligence, but the greatest possible diligence to ensure proper and timely service.' [Cit.]"[4] At that point "reasonable diligence" is insufficient.[5] The same elevated duty arises when defendant's answer challenges service.[6]
On August 11 Wade sent the summons and complaint to the sheriff to serve Dr. Whalen at a residence in Cobb County, Georgia. Dr. Whalen had moved to Irving, Texas, seven months earlier. The sheriff returned the service form to Wade by August 30 and indicated the doctor had moved. Wade sent the complaint via certified mail, return receipt requested, to the Cobb County address. It was forwarded to Dr. Whalen in Irving where he signed the postcard evidencing receipt. When Wade received the postcard, he sent another copy of the summons and complaint to the Cobb County sheriff and requested service be reattempted.
On October 12 Wade received Dr. Whalen's answer, which raised the defenses of defective service and statute of limitation and which denied he resided at the Cobb County address. Wade hired a private investigator on October 18, who informed Wade the next day of the doctor's address in Irving. A week later Wade served interrogatories asking for the doctor's current home address and place of employment.
Sometime between November 10 and 17 the Cobb County sheriff returned to Wade the service form showing unsuccessful service. Wade forwarded process to a Texas constable in Irving on the latter date. On December 1 Wade received Dr. Whalen's interrogatory responses which confirmed the Irving address and specified a work address. Two weeks later Dr. Whalen moved to a new residence in Dallas and on December 31 completed his work assignment for that employer. Service was unsuccessful at either the Irving address or the work address, and on January 12 Wade received the summons and complaint back from the Texas constable.
Several weeks later (February 3) Wade sent a letter to Dr. Whalen asking him to acknowledge service. The doctor moved for summary judgment on February 15 and served an affidavit listing his new address in Dallas. Wade forwarded the summons and complaint on March 14 to a Dallas constable, who in turn phoned Dr. Whalen on April 3 and 4 and set an appointment and served him on April 10.
During the eight months between the filing of the complaint and service of process, *460 Wade was directly responsible for four significant delays. First, between August 30 and October 17 (47 days) Wade made no substantive effort to determine Dr. Whalen's correct address even though (i) by August 30 the Cobb County sheriff had returned the service form indicating Dr. Whalen had moved and (ii) on October 12 Wade had received the doctor's answer asserting defective service and denying the Cobb County address.[7]
Second, from October 19 through November 16 (28 days) Wade was aware from his own investigator that the doctor had moved to Irving, but did not forward the process papers to an Irving constable until November 17.[8]
Third, from January 12 through February 2 (21 days) Wade did nothing to pursue service even though on January 12 he received the summons and complaint back from the Irving constable.[9]
Fourth, from February 16 through March 13 (25 days) Wade did nothing to pursue service even though (i) he was aware of Dr. Whalen's new Dallas address and (ii) Dr. Whalen sought summary judgment based on ineffective service.[10]
Wade made at least three errors contributing to the delay in service. First, he provided the Cobb County sheriff with an address that was seven months outdated, even though Dr. Whalen's forwarding address was available from the post office. "The burden is on the plaintiff to ascertain a defendant's residence, and that obligation does not arise only upon expiration of the statute of limitation. [Cit.]"[11] Plaintiff is obligated to ascertain this information before filing suit.[12]
Second, Wade sent a certified letter to the Cobb County address "in an attempt to see if the United States Post Office would disclose a new address." He did not check the box on the certified letter form (for an additional fee) to receive the addressee's forwarding address. The letter was forwarded to Whalen's Irving address where he signed the postcard that was returned to Wade. Not having been requested nor paid to do so, the postal service did not alert Wade to the Irving address. Wade's conclusion that this meant Dr. Whalen still lived at the Cobb County address was simply his own mistake that delayed discovery of the correct address.
Third, Wade misled the Irving constable by telling him Dr. Whalen traveled frequently to Atlanta and that he should try to serve him on a weekend. Dr. Whalen testified without contradiction that he traveled infrequently to Atlanta and never on a business day. The weekends were the least likely time for him to be home.
Based on Wade's delays and missteps, the court did not abuse its discretion in finding Wade did not show the greatest possible diligence.
2. Citing OCGA § 9-11-26(e)(2)(B), Wade contends Dr. Whalen was obligated to supplement his interrogatory responses to indicate that two weeks after serving them he moved to the new Dallas address. Regardless of whether the statute applies to this interrogatory response and whether Dr.
*461 Whalen's February affidavit was a "seasonable" amendment under the statute, the two-month period between Dr. Whalen's relocation and the affidavit overlaps only one of the four significant delays caused by Wade and does not excuse any of his three additional errors. Adequate other evidence grounded the court's finding.
3. Citing Starr v. Wimbush,[13] Wade argues that the first two orders of the court denying the motion for summary judgment and specifically finding ample evidence of reasonable diligence precluded a contrary later finding. The first order was entered on March 24, 1995 (before service was effected), and the second order was entered on September 21, 1995 (after service was effected).
In Starr the trial court had ordered service by publication in a ruling expressly finding defendant could not be found after due diligence.[14] Defendant was personally served two months later, during which time several additional steps were taken to locate him. Because the attempted service by publication was ineffective, and because service had not been perfected until eight months after the statute of limitation had run, defendant moved to dismiss. The court granted the motion, finding plaintiff had failed to show due diligence in attempting to perfect service. Starr reversed, holding the publication order had established due diligence and the record clearly showed due diligence from the time of that order until service.
Starr is reconcilable with OCGA § 9-11-60(h), which in 1966 (amended in 1967) abolished the law of the case rule.[15] Nevertheless, "judgments and orders shall not be set aside or modified without just cause and, in setting aside or otherwise modifying judgments and orders, the court shall consider whether rights have vested thereunder and whether or not innocent parties would be injured thereby...."[16]
Summary judgment orders which do not dispose of the entire case are considered interlocutory and remain within the breast of the court until final judgment is entered.[17] They "are subject to revision at any time before final judgment unless the court issues an order `upon express direction' under OCGA § 9-11-54(b)."[18] Because no express direction was issued on the first two orders, and because no rights had vested nor would any innocent parties be injured, power remained to revise the previous summary judgment orders upon a showing of just cause, an ingredient not demonstrated in Starr.
In Wade's case, the previous orders applied a standard of reasonable diligence whereas the greatest possible diligence was called for.[19] Both previous orders had been entered without a hearing, even though hearings had been requested.[20] Service did not occur until 17 days after the first order was entered. The judge who entered the second and third orders (another judge entered the first order) conceded that in entering the second order he had felt obliged to "parrot" the first judge without reviewing the matter closely. Unlike the first and second orders, the third sets forth a detailed analysis of the facts, including the ease with which service was perfected once a phone call was made to the doctor at his correct address. Modification of previous orders can be accomplished implicitly.[21]
*462 4. Citing Poloney v. Tambrands, Inc.,[22] Wade contends the doctor's actual notice of the action as evidenced by his filing an answer and participating in discovery means he was not prejudiced by late service. "Such notice is irrelevant. Where there has been no service of a suit, or waiver thereof, the necessity of service is not dispensed with by the mere fact that the defendant may in some way learn of the filing of the suit. In this case, there was no timely service and there was no waiver thereof."[23]Poloney differs in that it lists reasons to uphold the trial court's finding of diligence; such rationale has been rejected as a basis to reverse a trial court's finding of lack of diligence.[24]
Judgment affirmed.
RUFFIN, J., concurs.
POPE, P.J., concurs specially.
POPE, Presiding Judge, concurring specially.
I concur in the opinion because the trial court did not abuse its discretion in finding that plaintiff Wade did not show due diligence in serving defendant Whalen. Nevertheless, I am concerned with the standard of "greatest possible diligence" in evaluating Wade's attempts at service, and I recommend abandoning this standard except in instances in which the defendant has not been served and raises a service defense in his answer.
The standard of "greatest possible diligence" in the context of assessing a plaintiff's attempts at service outside the statute of limitation was first used by this Court in Roberts v. Bienert, 183 Ga.App. 751(1), 360 S.E.2d 25 (1987). In Roberts, this Court stated that while the plaintiffs were initially justified in relying on the marshal's return of service, their receipt of the defendant's responsive pleading to the complaint raising deficiency of service should have alerted them to the problem and inspired them, through counsel, to use the "greatest possible diligence to ensure proper and timely service." Id. at 752, 360 S.E.2d 25.
Again in Garrett v. Godby, 189 Ga.App. 183, 375 S.E.2d 103 (1988), this Court used the standard of "greatest possible diligence" in explaining plaintiff's duty to perfect service when the defendant had raised the defense of insufficiency of service in his responsive pleadings.
It was not until Walker v. Hoover, 191 Ga.App. 859, 383 S.E.2d 208 (1989), that the newly developed standard appeared in the context of a return of service before defensive pleadings were filed. In Walker, citing Roberts v. Bienert, this Court determined that the "receipt of the sheriff's first return of service advising that the defendant could not be found within the court's jurisdiction should have put her on notice and inspired her, through counsel, to exercise the greatest possible diligence to ensure proper and timely service." (Punctuation omitted.) Walker v. Hoover, 191 Ga.App. at 861, 383 S.E.2d 208. Since Walker, this Court repeatedly has used the elevated standard in the context of a plaintiff receiving a sheriff's return of service indicating that there was a problem with service. The origin of the standard has been losteven when defensive pleadings raising the defense of service have been filed, this Court has cited the return of service from the sheriff as the determinative point for using the "greatest possible diligence" standard. See, e.g., Mitchell v. Hamilton, 228 Ga.App. 850, 493 S.E.2d 41 (1997); Walker v. Bord, 225 Ga.App. 242, 483 S.E.2d 675 (1997); Sykes v. Springer, 220 Ga.App. 388, 469 S.E.2d 472 (1996); Devoe v. Callis, 212 Ga.App. 618, 442 S.E.2d 765 (1994); Nee v. Dixon, 199 Ga.App. 729, 405 S.E.2d 766 (1991); McManus v. Sauerhoefer, 197 Ga. App. 114, 397 S.E.2d 715 (1990). In fact, Patterson v. Johnson, 226 Ga.App. 396, 486 S.E.2d 660 (1997); and Robinson v. Stuck, 194 Ga.App. 311, 390 S.E.2d 603 (1990) appear to be the only decisions after Walker v. Hoover, 191 Ga.App. 859, 383 S.E.2d 208, employing the original rationale of the *463 "greatest possible diligence," in which the standard is triggered by the filing of responsive pleadings by defendant raising a service defense.
Meanwhile, despite this Court's continual use of the "greatest possible diligence" standard, our Supreme Court has not used this higher standard in evaluating problems with service outside the statute of limitation. In Poloney v. Tambrands, Inc., 260 Ga. 850(2), 412 S.E.2d 526 (1991), the Supreme Court affirmed the trial court's finding that the plaintiffs were diligent in effecting service. In Poloney, the Court noted that the defendant had notice of the action, had filed defensive pleadings, and had begun participating in discovery before the plaintiffs perfected proper service. The Poloney Court stated that it would not disturb the trial court's determination that "plaintiffs exercised due diligence in perfecting service...." (Emphasis supplied.) Id. at 852, 412 S.E.2d 526.
More recently, in Ga. Farm Bureau, etc., Ins. Co. v. Kilgore, 265 Ga. 836, 837, 462 S.E.2d 713 (1995), our Supreme Court again addressed the due diligence standard for service outside the statute of limitation. In that case, the sheriff had been unable to perfect service until two days after the statute of limitation expired because of the unavailability of a registered agent. The Court stated: "[i]n determining whether diligence was exercised, the focus is upon the plaintiff's efforts after becoming aware that the process server failed to perfect service in accordance with the time limit provided in OCGA § 9-11-4(c). Deloach v. Hewes, 211 Ga.App. 321, 322, 439 S.E.2d 94 (1993)." (Emphasis supplied.) Id., at 837, 462 S.E.2d 713.
In addition to our Supreme Court's failure to adopt this higher standard, my research indicates that this Court has not consistently applied the "greatest possible diligence" standard. For instance in Gordon v. Coles, 207 Ga.App. 889, 429 S.E.2d 297 (1993), a return of service showed that defendant had moved, and afterwards the plaintiff learned that defendant was living in Mexico. Despite an earlier return of service which showed that plaintiff was having problems serving the defendant, the Court used the standard of "due diligence." Again in Hossain v. Tohme, 205 Ga.App. 538, 539(1), 423 S.E.2d 4 (1992), despite the marshal's entry of service reciting that defendant had moved, this Court used the standard of "due diligence." See also Cantin v. Justice, 224 Ga.App. 195, 480 S.E.2d 250 (1997).
The problem with employing the higher standard of "greatest possible diligence" after the plaintiff receives a return of service from the sheriff is that it creates an illogical distinction. Many plaintiffs are aware that there is a problem with service, despite the fact that the sheriff has not so indicated on a return of service. The notion of "due diligence" is predicated on plaintiff's awareness that, for some reason, a defendant has not been served. Imposing upon this group of plaintiffs this higher standard serves no useful purpose. To the contrary, in cases in which the statute of limitation has expired and the defendant has entered an appearance in court and raised a service defense, the higher standard should be imposed upon the plaintiff. At this stage, a court is involved and the "greatest possible diligence" must be exercised by the plaintiff to ensure proper and timely service.
In conclusion, this Court should return to the use of the standard of "due diligence" in evaluating all service attempts and abandon the higher standard of "greatest possible diligence," except in cases such as Roberts v. Bienert, 183 Ga.App. 751, 360 S.E.2d 25; Garrett v. Godby, 189 Ga.App. 183, 375 S.E.2d 103; Robinson v. Stuck, 194 Ga.App. 311, 390 S.E.2d 603; and Patterson v. Johnson, 226 Ga.App. 396, 486 S.E.2d 660, in which the issue of service of process is raised by the defendant's responsive pleadings. To the extent that Mitchell v. Hamilton, 228 Ga.App. 850, 493 S.E.2d 41; Walker v. Bord, 225 Ga.App. 242, 483 S.E.2d 675; Sykes v. Springer, 220 Ga.App. 388, 469 S.E.2d 472; Devoe v. Callis, 212 Ga.App. 618, 442 S.E.2d 765; Nee v. Dixon, 199 Ga.App. 729, 405 S.E.2d 766; McManus v. Sauerhoefer, 197 Ga.App. 114, 397 S.E.2d 715; and Walker v. Hoover, 191 Ga.App. 859, 383 S.E.2d 208, employ the higher standard of "greatest possible diligence," they should be overruled.
NOTES
[1] OCGA § 9-3-71(a).
[2] (Citations and punctuation omitted.) Siler v. Johns, 173 Ga.App. 692, 693, 327 S.E.2d 810 (1985); Alexander v. Searcy, 204 Ga.App. 454, 457, 419 S.E.2d 738 (1992) (determination of due diligence reversible if discretion abused and insupportable as matter of law). See Lawrence v. Noltimier, 213 Ga.App. 628, 445 S.E.2d 378 (1994) (judge must "ascertain whether the plaintiff was in any way guilty of laches"); see also Mitchell v. Hamilton, 228 Ga.App. 850(1), 493 S.E.2d 41 (1997) ("plaintiff has the burden of showing that due diligence was exercised"); Cantin v. Justice, 224 Ga.App. 195, 196, 480 S.E.2d 250 (1997) (determination is within the trial court's discretion).
[3] (Emphasis in original.) Varricchio v. Johnson, 188 Ga.App. 144, 145, 372 S.E.2d 455 (1988).
[4] Mitchell, supra, 228 Ga.App. at 851(1), 493 S.E.2d 41; see Walker v. Bord, 225 Ga.App. 242, 243, 483 S.E.2d 675 (1997) (duty heightened to the greatest possible diligence once marshal returns summons).
[5] Sykes v. Springer, 220 Ga.App. 388, 390(2), 469 S.E.2d 472 (1996); cf. Ga. Farm, etc., Ins. Co. v. Kilgore, 265 Ga. 836, 837, 462 S.E.2d 713 (1995) ("In determining whether diligence was exercised, the focus is upon the plaintiff's efforts after becoming aware that the process server failed to perfect service in accordance with the time limit provided in OCGA § 9-11-4(c)").
[6] Patterson v. Johnson, 226 Ga.App. 396, 398, 486 S.E.2d 660 (1997); Robinson v. Stuck, 194 Ga.App. 311, 312(1), 390 S.E.2d 603 (1990); Roberts v. Bienert, 183 Ga.App. 751, 752(1), 360 S.E.2d 25 (1987).
[7] See Devoe v. Callis, 212 Ga.App. 618, 620(1), 442 S.E.2d 765 (1994) ("the record shows an unexplained lapse of over a month ... in which there was no effort by [plaintiff] to verify [defendant's] address").
[8] Id. ("After the private investigator discovered that [defendant] had moved, there was an additional delay of nine days before [plaintiff] contacted a process server.").
[9] See Walker v. Bord, supra, 225 Ga.App. at 243, 483 S.E.2d 675 (plaintiff "did nothing for ten days following his failed attempt at serving" defendant); Varricchio, supra, 188 Ga.App. at 145, 372 S.E.2d 455 ("plaintiff sat and did nothing" to attempt service for over three weeks after sheriff informed plaintiff that defendant had moved).
[10] Devoe, supra, 212 Ga.App. at 620(1), 442 S.E.2d 765 (plaintiff "did not act promptly on new information").
[11] Id., at 619(1), 442 S.E.2d 765 (defendant had moved eight months before plaintiff filed suit); see Mitchell, supra, 228 Ga.App. at 851(1), 493 S.E.2d 41 (address was two years old); Patterson, supra, 226 Ga.App. at 398, 486 S.E.2d 660 (plaintiff has "the responsibility to investigate and learn where the defendant may be located and served"); Walker v. Bord, supra, 225 Ga.App. at 242, 483 S.E.2d 675 (forwarding address was available from post office).
[12] Walker v. Hoover, 191 Ga.App. 859, 861, 383 S.E.2d 208 (1989).
[13] 201 Ga.App. 280, 281-282(2), 410 S.E.2d 776 (1991).
[14] Id. at 282, 410 S.E.2d 776.
[15] Ga. L.1966, p. 664, § 60(h); Ga. L.1967, p. 239, § 27.
[16] OCGA § 9-11-60(h).
[17] Hodges Plumbing, etc., Co. v. ITT Grinnell Co., 179 Ga.App. 521, 522(1), 347 S.E.2d 257 (1986); see Barber v. Collins, 201 Ga.App. 104, 105(2), 410 S.E.2d 444 (1991).
[18] Hodges, supra, 179 Ga.App. at 522, 347 S.E.2d 257; see Bradley v. Tattnall Bank, 170 Ga.App. 821, 822-824(1), 318 S.E.2d 657 (1984).
[19] See Sykes, supra, 220 Ga.App. at 390(2), 469 S.E.2d 472.
[20] Because the requests were not contained in a separately filed pleading entitled "Request for Oral Hearing," the court was not required to hold a hearing but could do so at its option. See Uniform Superior Court Rule 6.3.
[21] Glover v. J.C. Penney, etc., Ins. Co., 181 Ga. App. 753, 754(1), 353 S.E.2d 587 (1987).
[22] 260 Ga. 850, 852(2), 412 S.E.2d 526 (1991).
[23] (Citations and punctuation omitted.) Walker v. Bord, supra, 225 Ga.App. at 244, 483 S.E.2d 675; see Sykes, supra, 220 Ga.App. at 390(3), 469 S.E.2d 472.
[24] See Walker v. Bord, supra; Sykes, supra.